The opinion of the court was delivered by
. Horeblower, C. J.
The question now to be settled is, whether the verdict rendered in this cause before Mr. Justice White, shall be set aside, and a new trial granted. It must be admitted, that with no other light than such as could be drawn from the opinions of this court, on the decision of the writ of error, as reported in 1 Harr. R. 273, the cause must have been tried under great embarrassment both to court and counsel; for though the *353 Justices of this court were all of opinion, that the judgment of the common pleas ought to be reversed on the writ of error, yet their decision seemed to settle, definitely, none of the legal questions affecting the substantial rights of the parties. The opinions delivered and published, if not actually discordant, did not put the reversal upon the same grounds. I propose therefore to review the whole ease, as it now appears before the court; and so far as the rights of the parties depend upon questions of law to settle those rights.
The plaintiffs insist upon their right to proceed on the execution, upon several grounds, viz:
I. They say the deed made to their intestate John Earle, was inoperative and void. First, because it is a deed from William L. Earle .and Evelina his wife, and not from him and Harriet his wife, and recites, and purports to have been made in virtue of a letter of attorney, that never had any legal existence, either before the making of the sale and conveyance, or at any time afterwards. And secondly, because even if the recital of a void letter would not be fatal to the plaintiff’s title at law, provided the attorneys at the time of making the deed, had on record a good and sufficient authority to sell and convey, yet that in fact, they had no such authority; the first letter of attorney having been a joint ®ne, had been revoked by the death of Harriet Earle one of the constituents in that power.
II. The plaintiffs contend that even if the deed had been free from any objections, in respect to its form and contents, they are not precluded by it, from resorting to their execution, because they say, it had never been accepted by John Earle, as a deed,, in consummation of the contract of purchase.
III. The plaintiffs contend, that if the deed is a nullity for want of authority; or legally objectionable as a deed, because of a misreeital of the letter of attorney ,• or, if the deed is valid as’ such, but the title of their constituents to the whole, or to a part of the farm, had failed, then it is immaterial whether the deed had been accepted or not; for in dither case, the plaintiffs might proceed to enforce their execution at law.
IV. The plaintiffs complain, that on the trial, legal evidence, offered by them, was ruled out; and that illegal evidence, objected *354 to by them, was admitted. It is not necessary here, to specify, in what these supposed errors consisted; so far as may be material, they will be stated and examined hereafter.
On the other hand, the defendant by his counsel insists:
I. That no lawful levy was ever made under the execution in this case; such as can be enforced by the plaintiffs, or executed by the sheriff.
II. That, the deed, although by mistake or otherwise, it recites avoid letter of attorney was nevertheless, valid in law; inasmuch as the attorneys, had of record, a legal authority to make the sale and to execute a valid deed, sufficient to pass all the estate of their constituents, in the premises, to John Earle.
III. That in law and in fact there was a full and final delivery to John Earle, and a final and binding acceptance by him, of the deed, in fulfilment and completion of the contract of sale and purchase of the farm.
IV. That there not having been a total failure of consideration, inasmuch as Wiliam L. Earle had title to ten or twelve acres of the farm, which title vested in John Earle by the deed, and still remains in him, he cannot rescind the contract, or repudiate the deed, and resort again to his execution.
I have thus, I believe, fairly and fully,stated the points taken and grounds relied upon by counsel on both sides; and shall proceed to express my opinion upon the whole legal merits of the controversy, upon the facts above mentioned, in connection with some others incidentally involved in the cause.
Upon the argument of this cause, upon the writ of error, (reported in 1 Harr. R. 273,) it struck me as a case not within the rules and principles applicable to actions against purchasers, for the consideration money, or actions by purchasers, to recover back the consideration money paid. In other words, that the plaintiff ought not to be considered in the position of a plaintiff in assumpsit, seeking to recover back consideration money which he had paid; nor yet, in the light of a defendant, sued for the purchase money of lands, for which he had received a deed. Nor am I yet satisfied that I was wrong in the view I then took of the case, as relates to this matter.
The plaintiff was in possession of a judgment, execution and *355 levy. It was, in truth and fact, unsatisfied. The sheriff, by whom the levy had been made, was dead. It was therefore necessary for the plaintiff to invoke the process of the court, in the manner prescribed by the statute, in order to reap the fruits of his execution. But the death of the sheriff did not change the rights, or relative positions of the parties. It did not place them in different attitudes towards each other, than they would have occupied, if the sheriff had continued in life. In other words the death of the sheriff did not impair the rights and remedies of the plaintiff; nor did it place the defendant in any better condition, or give him any other legal means of resisting the execution, than he would have had, if the sheriff had continued in life. Suppose then the sheriff had been living and the plaintiff had given him notice to proceed and finish the execution of his writ, on pain of amercement; and the sheriff had thereupon advertised the property levied on for sale ; in what manner could the defendant have resisted such a proceeding ? I can conceive of only two ways. lie might have filed a bill in equity ; and if his case was an equitable one, have enjoined the plaintiff from proceeding to a sale of his property, until all the rights and equities of the parties had been examined and adjusted in that court; and such, it seems to me, ought to have been the defendant’s course, when this scire facias was issued. Or, secondly, the defendant might have applied to the court to stay the proceedings of its officer on the execution, and to have satisfaction of the judgment entered of record. But can it be supposed for one moment, that this, or any other court of law, upon the facts of the case, as they now appear before us, would have ordered satisfaction of this judgment to be entered of record, and thus, have furnished the defendant with record evidence, that the plaintiff had received his whole debt, when in truth and justice, it remained entirely unsatisfied, except so far as ten or twelve acres of land would go towards paying it? Such a course would have left the plaintiff without remedy. He could never again have sued for the debt, or for any part of it. Nor could he have had any remedy for the failure of title to the land; for even admitting the deed to have been valid, as against William L. Earle, yet the covenants of title, seizin and of warranty, contained in it, were utterly worth *356 less, and unauthorised by either of the powers of attorney. Nor would the court, under the facts in this case have refused to amerce the sheriff, if he had neglected or omitted to execute the writ. Such a refusal,, would have been equivalent to declaring the judgment satisfied ; it would have left the defendant without remedy, and placed him entirely at the mercy of the defendant. To put the case in another aspect. On a motion to have satisfaction entered of record; or effectually to oppose an amercement of the sheriff for refusing to execute the writ, the court would require satisfactory evidence of a release of the judgment or of a bona fide payment or satisfaction of the debt. Ought the court to be satisfied with any thing les3, in answer to this writ of scire facias ? It calls on the defendant to show cause, why execution should not be completed. He appears, and by way of showing cause, he pleads that he has paid the debt. Has he proved it ? Certainly he has not. He has proved at most, that he made •an honest, but ineffectual attempt to do so. The plaintiff once thought he was paid; but he found himself mistaken. What he received for substance; proved- to be unsubstantial. It eluded his grasp; and whatever equities, arising out of this unfortunate transaction, may exist between these parties, one thing is certain : this judgment has never been satisfied at law, or in fact; and we can never refuse the plaintiff the benefit of his execution, until that has been done.
It was this view of the subject, which influenced my mind on the argument of this cause, when it came before the court on a writ of error to the common pleas of Burlington. I could not consider the plaintiff as standing in no better position than a suitor, coming here to recover back money he had paid on a failing consideration ; and liable, in that character, to be met with all the difficulties that stand in the way of, and must be overcome by, such a suitor. I could not, and cannot now but consider him as a judgment creditor, coming here, to ask the process of this court, to give him the fruits of a judgment at law, not impeached and in full force on the record. It seems to me that such a judgment creditor has a right to say to the defendant, if you want the court to deny me its process to carry my judgment into effect, you must show, that you have actually paid or satisfied *357 the debt: not by transferring to me, a mere right of action, a clouded title; and that too by a deed imperfect in its character, purporting to have been made by an authority that had no legal existence; and which, if ever available to me at all, must become so, by the judicial action of some court of law or equity, who may or may not be of opinion that it conveyed to me any title.
He has a right, moreover, to say to him, if you have acquired any rights or equities against me, growing out of the abortive arrangement, by which you essayed to satisfy this judgment, you must seek them in the appropriate tribunal. Such rights and equities, uncertain and unliquidated, cannot be set off in this way, against my judgment. And such, it strikes me, ought to be the language of this court. But the defendant insists that the title was good for the ten or twelve acres, and that for them and for rents and profits received by the plaintiff, he ought to have an allowance: but these are matters we cannot apportion and settle in this court, and upon this issue. Whether the plaintiff is bound to pay for the ten or twelve acres, under the circumstances of this case, or if bound, how much he ought to be charged for them, we have no means, in this court and upon this plea, of determining.
1 do not mean by all this, that a defendant may not set up equitable, as well as legal payments, in a court of law, where the amount of such payments are ascertained, and the rights of the parties settled; but only, that this court cannot inquire into and settle mere equities.
The effort on the part of the defendant is to place the plaintiff in the position of a purchaser, seeking, in a suit at law, to recover back purchase money paid by him : whereas, as was said by Justice Ford, in his opinion in this cause 1 Harr. R. 284, “ this plea,” (the plea of payment) “ is in reality, a proceeding at law, by the defendant, for the purchase money.” This is certainly the true state of the case; for if the defendant succeeds, he as effectually recovers the purchase money of the plaintiff, as if he recovered it in cash, and then paid off the judgment with it.
In my opinion therefore the defendant ought to be considered as the plaintiff in this cause, so far as relates to the question, *358 whether John Earle ought to pay for this farm, or which is the same thing, whether, he ought to take the farm in satisfaction of his judgment. The onus lies on the defendant. He must support his plea of payment, by proving that John Earle is bound to pay him for the farm. If this view of the subject is right, then clearly, the defendant cannot have the benefit of the plea of payment, and thereby, virtually, recover the purchase money, unless he has made out a case, which, upon evidence and law, would entitle him in an action of assumpsit to recover this money. In my opinion, the evidence in this cause would not support such an action. But I may be wrong in this view of the case; and hence it becomes necessary to examine and express an opinion on other points made in the cause.
One reason assigned for a new trial was, that the court rejected legal and admitted illegal evidence. I will not go through the state of the case and take up the specific items of exception; but will say, in general, that all evidence about John Earle’s having purchased out the Burr title, after that title had been established ; whether he made a good or a bad bargain; whether, in consequence of his peculiar situation in relation to the farm, he was enabled to purchase it, on more favorable terms, than he could otherwise have done; whether he received rent for the farm, or any part of it; when and from whom he received rent, and how much; and whether he made advantageous sales of the property, or not; or when, to whom and for how much he sold, were entirely irrelevant to the issue, and calculated only to embarrass the cause.
A moment’s attention to the issue, must make this plain. The defendant pleaded payment, and issue was taken on that plea. In support of this plea, the defendant set up the sale of a farm to the plaintiff for the sum of $5083, and gave in evidence the plaintiff’s receipt for the amount of the consideration money. To rebut this the plaintiff showed that the defendant had no title to the farm except as to ten or twelve acres of it. This was admitted by the defendant; but then he insisted that the bargain had been consummated and had become absolute at law; that a deed had been delivered to and accepted by the plaintiff, and the title being good for the ten or twelve acres, it was binding on the *359 plaintiffj and he must pay ; or, which is the same thing, he must allow the whole $5083, on the execution. To this the plaintiff rejoined, by denying, in the first place, that the paper delivered to him as a deed, was a legal and effectual deed, to pass any title to the premises, even if the whole farm belonged to the defendant ; that it was a nullity and gave no title, even for the ten or twelve acres: and, secondly that the deed, whether good or bad in itself as a deed, had never been accepted by him, in the legal sense of that term, as a consummation of the contract of bargain and sale.
These then, were the matters in dispute on this trial; the questions of law and fact, upon which the issue depended. That issue was, payment, or no payment: or in other words, had there been a bargain and sale of the farm, consummated between the parties and binding on each of them at law. Now I cannot see how the inquiry, whether the plaintiff purchased out the Burr title, how much he gave for it, whether he made a good or a bad bargain, or how much he afterwards sold it for, could become material to this issue, or in any way elucidate the matter. The plaintiff had purchased the farm, or he had not. If he had purchased, and was bound by his bargain, then the defendant’s plea of payment, to the extent of the consideration money, at least, was supported. In that case the plaintiff had a right to purchase his peace, and buy out the Burr title, as cheap as he could. If he did so advantageously, surely that advantage ought not to enure to the benefit of the defendant. Nor could the fact that the plaintiff had extinguished the Burr title, or the terms upon which he had done so, affect the issue in the cause. On the other hand, if the plaintiff was not bound by the contract of purchase, then the plea of payment was not supported, and the plaintiff’ had a right to buy the farm of the real owner for such sum as he could get it for. I think therefore that all evidence upon the subject of the plaintiff’s purchase of the Burr title, or of his subsequent sales or disposition of the farm, was unlawful. But the matters just adverted to, go only to the regularity of the trial. There are two questions to be settled in the cause that go to the merits of the case; they are,
I. Was the deed executed by Richards and Black to the plain *360 tiff, good for any thing ? Would it pass any title, under the laws of this state? and if it would, then,
II. Was the contract of bargain and sale ever executed ? In other words, had it been consummated, by the delivery and acceptance of that deed ?
The first question relates to the validity of the deed. I am of opinion that it is immaterial, whether the letter of attorney, from William L. Earle and Harriet his wife, was a joint or a joint and several power. Her death was no revocation in either case. Whatever it was in form, in legal effect, it was only his letter of attorney. So far as respects his wife, it was a nullity. She could not sell her own lands, or bar her dower in her husband’s, by letter of attorney. A’deed made in pursuance of this letter, it having been duly proved and recorded, would have passed the title of William L. Earle, if he had any. But the deed does not recite, refer to, or in any way purport to have been made in pursuance of that letter of attorney. If it had been silent upon the subject of the authority upon which it had been made, the law, perhaps, would at once have referred it to the letter of attorney lawfully on record. But on this point the deed speaks for itself. It is clear and explicit. It is not only in terms a deed from William L. Earle and Evelina his wife; but it declares it was made in pursuance of a letter of attorney “ from under their hands and seals, recorded in the office for recording deeds for the city and county of Philadelphia, in letter of attorney book, &c., bearing date the 18th of March, 1825.” 'Thus in very terms excluding the idea that it was made in pursuance or in contemplation of any other authority than the one recited. The question then is whether a deed,, executed by an attorney, who has a'valid authority on record, but which deed, in very terms, declares it is made in pursuance of another letter of attorney, which in fact is of no legal validity here, will be a good deed in law, or a good conveyance, at law, of the legal title, of the constituent, to the grantee?
The inquiry is not whether it might be made a good deed; whether a court of equity would correct the mistake, if it were one and uphold the deed, in virtue of the real and valid letter of attorney: a deed or instrument, perfectly valueless, or unintelligible upon the face of it, or without a seal, might be corrected or *361 established in a court of equity. But the question is, whether this is, in itself, a good and valid deed, as a deed, to pass an estate at law ; whether any action could be maintained on it at law ? or whether, if given in evidence in an action of ejectment, it would, per se, maintain or defend the action even against William L. Earle himself, or any person claiming under him ?
The purchaser was entitled to a lawful deed; not one which at law is a nullity ; or which he could only make available at law or in equity by evidence aliunde or in pais. At common law, a man might make a grant, a feoffment, or livery of seisin by an attorney ; but our statute has regulated and restricted the common law rule. It says, Elm. Dig. 80, “ all lands, &c., that for the time to come, shall be sold, conveyed or disposed of by virtue of such powers or authorities as aforesaid, such powers shall be first proved and entered upon the public records; after which, all grants, &c., made pursuant to the powers thereby granted, shall be deemed as good and valid, as if, &c.”
Now it cannot be pretended, that this deed was given in pursuance of, and in conformity with the letter of attorney, given by William L. Earle and Harriet his wife ; and which was the only letter of attorney, then lawfully on record. And without any such letter of attorney as it recited, now lawfully on record, it is in my opinion absolutely void and inoperative at law, or as a legal conveyance. It may no doubt be made available by the aid of a Court of Chancery, but per se, it passed no title at all. It, at most, in connection with proof in pais of the existence of such a power as it recites, gave the plaintiff a right to have a legal title.
If it should ever become necessary for John Earle, or those claiming under him, to bring an ejectment to get into possession of this farm, or to defend their possession in such an action, by showing documentary title, paramount to that of their adversary, they would have to give in evidence, not only this deed and the letter of attorney recited in it, but also the letter of attorney executed by William L. Earle and Harriet his wife ; and then prove by evidence, in pais, that the deed was intended to be, and in fact was, executed in pursuance of the latter. But would they be permitted in a court of law to contradict their own deed, and *362 show that it had been made in pursuance of a totally different power than that recited in it? This I very much doubt. At any rate, the plaintiff is not bound to take the hazard of such a question.
It was suggested on the argument, that in any suit with William L. Earle, or persons claiming under him, he and they would be estopped.. But estopped from what and by what? Surely, they would not be estopped from denying, that any such letter of attorney, as that recited in the deed, had ever been executed or recorded. This will not be pretended. Would they then be estopped from denying that the deed had in fact been made in virtue of the letter of attorney given by William L.Earle and his wife Harriet? — Upon what principle would such an estoppel rest ? In the first place they would have no necessity to deny it. The deed itself denies it. It says it was made in virtue of a letter of attorney from William L. Earle and his wife Evelina. If then, John Earle would be permitted in aoourt of law, to contradict the deed under which he claims, and show that it was made in pursuance of a different authority from that which it recites, most certainly it would be competent for William L. Earle to deny, and if he could, to disprove that fact. It is certainly idle to talk of estopping a party from denying that which his adversary must prove, or fail in his suit. Besides, estoppels must be mutual. If one is estopped, both must be, and then John Earle would be estopped from denying that his deeds had been made in virtue of the power of attorney recited in it. 2 Jac. Law. Dict. 439.
I recur, then, to the real question to be decided. It is a pure question of law, and must be settled by the court. We cannot escape it. Did the deed delivered by Richards and Black to John Earle, pass any title to him ? If it did not, it was a nullity ; and then it is of no consequence whether John Earle sent it back or not, or how long he kept it before he sent it back. In my opinion, it was a void instrument, at law; and admitting that by reason of the first letter of attorney, this deed might have been established in equity, yet, that in this court, and in a suit at law, it is of no validity as evidence of title. If A, describing himself as attorney for B, execute a deed to me in his name, but have no authority to do so, or no such authority as he describes, it is a nullity, *363 and passes no title. It was on this ground, that I said, as reported in 1 Har. Rep. 273, that John Earle had no title to any part of the farm; that is, no legal title, no legal conveyance; and the more I have reflected on it, the more I am confirmed in that opinion.
But if I am wrong in all the views I have taken, then I admit, the cause stands alone upon the question whether the deed, good or bad, was ever accepted by John Earle, in the legal sense of that term, as a consummation of the bargain and sale; so that he must pay the money, and seek his remedy, if he has any, for the failure of title on the covenants in the deed ; or go without any, if those covenants, were as they certainly are, in this case, without authority and void.
This is a mixed question of law and fact, to be settled by the jury, under the advice of the court; which, in a case like this, ought to be a very special and guarded. It is admitted by the counsel for the defendant, or if not admitted, it is certainly true, that notwithstanding John Earle had given a receipt for the money and taken possession of the premises, he might still have rejected the deed for its inaccuracy; or have rescinded the contract, on the ground of Evelina’s contingent right of dower, or the doubt which hovered over the title. Under these circumstances, and in view of the fact, that the attorneys of William L. Earle, neglected to deliver any deed to John Earle, for more than a year after the vendue, we ought not to hold him bound by a mere constructive acceptance of the deed, unless we are compelled to do so by the plainest rules of law.
There is no evidence of any positive or express acceptance of the deed ; nor even that it was ever read to, or by John Earle. There was no final settlement between the parties; no ascertainment or payment of the balance due on the execution; no receipts passed between the parties. The whole matter of the judgment and execution stood open and unsettled, and the attorneys never delivered the deed to John Earle, until the rumor of the Burr claim had become rife. John Earle had the deed but a short time, before we find it in the hands of his counsel, and within three or four weeks, it was repudiated and sent back to Mr. Black, with the reasons for not accepting it.
This, if an acceptance at all, was a mere constructive one; an *364 acceptance implied in law, from the length of time John Earle had the deed in his possession before he sent it back. I think it is going far, to leave it to the jury to say, whether this was an acceptance of the deed, in the legal sense in which we here use that term. Perhaps, however, it was strictly right to do so, with well-considered instructions from the court, of what in law, amounted to such an acceptance.
An objection was taken on the argument to the form of the levy made by sheriff Haines. But in my opinion, that is a matter not within the issues in this cause. Whatever difficulties may arise hereafter, between purchasers, at the sheriff's sales, and the defendant or his assigns, must be settled when they happen. I am entirely satisfied with the opinion expressed by Justice Nevius, in his charge to the jury on that point.
Upon the whole, I am of opinion the verdict ought to be set aside, and a new trial granted — the costs to abide the event of the suit.
Verdict set aside and a new trial granted.
White, Nevius and Whitehead, Justices, concurred. Carpenter, Justice, did not hear the argument.
Cited in Kearney v. Macomb et al., 1 C. E. Gr. 198.